UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

IN RE MACHELLE PENDLEY           Case No. 05-50291
     Defendant

                            Chapter 7

FUGATE LUMBER COMPANY, INC.       Adv. Proc. No. 05-5017
     Plaintiff
vs.

MACHELLE PENDLEY
     Defendant

## MEMORANDUM-OPINION

THIS CORE PROCEEDING[1] comes before the Court on Plaintiff Fugate Lumber Company, Inc.'s ("Plaintiff") Complaint for Determination of Dischargeability. The Plaintiff contends that the Defendant, Machelle Pendley ("Defendant"), incurred a $5,595.09 debt that should be held nondischargeable under 11 U.S.C. §523(a)(2)(A) because it was obtained through false pretenses, false representations and actual fraud. Defendant responds that when she opened her line of credit with the Plaintiff she did not knowingly make false representations nor did she intend to deceive the Plaintiff. Defendant argues that the debt in question is dischargeable and that §523(a)(2)(A) is not applicable. Based upon the sworn testimony of witnesses and statements of counsel at trial, and the entire record in this case, the Court finds that the debt owed by the Defendant to the Plaintiff does not meet the nondischargeability standards set forth in 11 U.S.C. §523(a)(2)(A), and this Court, therefore, finds in favor of the Defendant.

---

[1] *See* 28 U.S.C.§157(b)(2)(I) and (O)

1

## FINDINGS OF FACT

This Court held an evidentiary hearing in Paducah, Kentucky, on September 27, 2005. Both the Defendant and Plaintiff appeared, were represented by Counsel, and offered evidence and testimony.

The Defendant applied for a credit account with the Plaintiff on January 19, 2005. The Defendant testified that she originally opened the account with the Plaintiff because she intended to make repairs to her home caused by snow damage. Defendant hired friends of hers, Jamie Trailor and Mark Trailor (collectively "Tailor brothers"), to make the repairs. The Defendant ultimately decided to move rather than fix the damage to her home based on the extent and cost required to return the home to its former condition. After Defendant decided not to make the repairs she and the Trailor brothers decided to start a home repair business, with the Trailor brothers preforming the work and the Defendant doing the bookkeeping. The Defendant allowed the Trailor brothers to use her line of credit with the Plaintiff to make purchases for the business.

The Plaintiff knew the credit line would be used for the small business as evidenced by the testimony of Jason Gillaspie, an outside salesman for Fugate Lumber. Mr. Gillaspie testified that he accepted an application for a line of credit from Jamie Trailor on behalf of Machelle Pendley on January 19, 2005. The credit application was a two page document. The first page of the application required only basic information, including a name, address and employment information. The second page listed the terms and conditions, setting forth interest rates and containing a clause that states that "giving a false statement of my financial condition may result in...the possible loss of [the] right to have a debt discharged in bankruptcy." Mr. Gillaspie

testified that he was told at the time of the credit application that the credit line was for Mr. Trailor's business.[2] Neither Mr. Gillaspie nor anyone else from Fugate lumber ever discussed the credit application with the Defendant, nor questioned Jamie Trailor when he submitted the application. Mr. Gillaspie even testified that he had never seen the Defendant prior to the commencement of the adversary proceeding and, to his knowledge, the Defendant had never been to Fugate Lumber. The application was approved, and charges began to accrue on the account on January 20, 2005.

Defendant testified that she intended for only needed materials, such as nails and other small items, to be charged on her credit line and that she would pay off the balance each month. The Defendant initially placed a note on the account that she should be contacted on any charge in excess of $200.00. The Defendant claimed she had never been contacted about charges of more than $200.00 and removed the $200.00 limit on the account in February because a specific job required materials that would cost in excess of $200.00. The Defendant further stated that she never intended for the Tryalor brothers to purchase machinery or other large ticket items on the account.

The Defendant testified that in early February she received and paid a bill from the Plaintiff for approximately $200.00. Subsequent to the February bill, the Trailor brothers made numerous purchases on the line of credit, totaling over $5000.00. As evidenced by the invoices submitted by the Plaintiff detailing the charges made on the Defendant's account, the majority of the invoices were singed by either Mark or Jamie Trailor and no invoice was signed by the

---

[2] Mr Gillaspie testified on direct examination, "I know Machelle was supplying the credit for their [Trailor brothers] business, to my – in my understanding."

Defendant. Mr. Gillaspie testified that he never met the Defendant and that he dealt solely with the Trailor brothers. The majority of the material purchased on the Defendant's account was delivered to job sites as requested by the Trailor brothers. No evidence was presented that the Defendant had knowledge of the purchases made in February 2005.

Defendant filed for bankruptcy on February 23, 2005, and did not list the Plaintiff on her Schedule F because she did not realize there was a remaining balance on the account. The Defendant subsequently amended her Schedule F after receiving a bill for $5,356.67 from the Plaintiff for charges incurred on her account during the month of February.

## CONCLUSIONS OF LAW

Under 11 U.S.C. §523(a)(2)(A), a debtor may not discharge a debt resulting from "an extension...of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To obtain a finding of nondischargeability under §523(a)(2)(A) a creditor must show by a preponderance of the evidence that (1) the debtor obtained money through a material misrepresentation either knowingly or with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the debtors misrepresentations; and (4) the reliance by the creditor was the proximate cause of the resulting loss. *In re Rembert,* 141 F.3d 277, 280-281 (6th Cir. 1998). The debtor's intent is ascertained by looking at the totality of the circumstances, and all exceptions to discharge are strictly construed against the Plaintiff. *Id.* at 281-282.

*In re Rembert,* 141 F.3d at 281, the controlling Sixth Circuit case, further states that the proper inquiry is whether a debtor *subjectively* intended to pay the debt. The standard set forth

under §523(a)(2)(A) "requires a showing of actual or positive fraud, not merely fraud implied by law." *Id.*, *internal citations omited.* Further, while "recoginz[ing] that a view to the debtor's overall financial condition is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith,...the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith." *Id.* A court is required to look at the particular circumstances of a case and determine if the debtor had the "requisite fraudulent intent" as determined by a review of the circumstances of the case at hand." *Id.* at 282.

The Plaintiff argues that the above standard is satisfied in the present case because the Defendant applied for the credit line only one month before filing for bankruptcy and, therefore, knew that she would seek to have the purchases on the credit line discharged in bankruptcy. The Plaintiff contends that the Defendant, therefore, materially misrepresented her intention to pay the account at the time she applied for the credit line. As set forth above, proximity in time between the credit application and the bankruptcy filing, without additional proof, is not enough to prove that the Defendant materially misrepresented her intention to pay for the items purchased, the first element essential to a nondischargeability finding under §523(a)(2)(A). The Plaintiff has made no allegations, aside from the closeness in time between the credit application and the bankruptcy filing, and has not provided this court with any evidence to reach this conclusion on its own.

The Plaintiff's representative Mr. Gillaspie testified that he knew that at the time of the credit application the Trailor brothers' intended to use the line of credit for their small business. Plaintiff, thereafter, made multiple deliveries to the Trailor brothers' job sites. The Plaintiff accepted the basic credit application, which did not ask for any detailed financial information

5

from the Defendant, without speaking to the Defendant and did not question her about other people using her account. The Defendant provided credible testimony that she opened the account fully intending to pay off the balance each month. She, in fact, did pay the first bill in full. The Court also believes that the Defendant was being forthright when she stated under oath that she did not have knowledge of the charges being made by the Trailor brothers during the month of February.

Based on the facts presented at the evidentiary hearing, this Court cannot find that the Debtor applied for a credit line and incurred charges under false pretenses with the intention of making a false representation, or actual fraud as enumerated under 11 U.S.C. §523(a)(2)(A). The close proximity in time between the application and the bankruptcy, without other evidence, is simply not enough to support a nondischargeability finding under §523(a)(2)(A).

Therefore this Court finds in favor of the Defendant.